# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| DAVID EARL MCCORVEY, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 13-0118-WS-N |
| | ) |
| ALABAMA RIVER CELLULOSE, LLC, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the following defense motions: (1) motion to exclude testimony, (Doc. 100); (2) motion for summary judgment, (Doc. 103); and (3) motion to strike. (Doc. 127). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 101-02, 105-07, 115-16, 119-20, 127), and the motions are ripe for resolution. After careful consideration, the Court concludes that all three motions are due to be denied or denied as moot.

## BACKGROUND

According to the complaint, (Doc. 1-1 at 2-19), the plaintiff was a truck driver hauling loads of tree logs to a pulpwood facility owned by Alabama River Cellulose, LLC, the sole remaining defendant. On January 19, 2011, as his truck was being unloaded by employees of the defendant, the plaintiff was struck in the back by a piece of wood that had shot out of the defendant's machinery.

Count One alleges that the plaintiff was a business invitee of the defendant and that he was injured by the defendant's negligence. Counts Two through Six attempt to set forth various other claims, which the plaintiff has "withdraw[n]" in

response to the defendant's motion for summary judgment. (Doc. 120 at 1). The defendant does not object to the withdrawal. (Doc. 127 at 3).

**DISCUSSION**

**I. Motion to Exclude Testimony.**

The defendant seeks to exclude the testimony of Joe Robinson, a fact witness, and of Robert Tolbert, an expert witness. (Doc. 100 at 1). In response to this motion, the plaintiff "removes and withdraws Robert Tolbert as a witness for the Plaintiff." (Doc. 115 at 1).

At the risk of oversimplification, the defendant operates a "Woodline" conveyor system that turns tree-length logs into wood chips. Logs are fed into an open trough known as the "Powerfeed" by either an overhead crane ("the Andritz") or a large forklift with a grapple ("the Taylor"). The logs may be fed into the Powerfeed directly from a truck as it is unloaded or from an adjacent stack of logs in what is known as the "Woodyard." Logs move down the Powerfeed into an enclosed Debarker Drum, which strips the logs of bark, and on to a Chipper, which reduces the logs to wood chips. The entire Woodline system stands about 30-35 feet above the ground. (Doc. 101 at 3-5; Doc. 106 at 4-6 & 5 n.5; Doc. 120 at 3-4).

Parallel to the Woodline system is an open area. Log trucks enter this area to be unloaded. Unloading occurs adjacent to the Powerfeed on a concrete pad. On the day of the incident, the Taylor was used to unload log trucks. (Doc. 105-10 at 1-2; Doc. 106 at 4-5 & 4 n.4).

While their vehicles are unloaded, drivers are required by the defendant to walk, wearing protective gear, to a "safe shed" located under part of the Woodline system. According to the plaintiff, he began walking towards the safe shed, turned back to observe the Taylor in operation, and was struck by a projectile from the Powerfeed, which he did not see because his back was turned. (Doc. 106:4-6; Doc. 120 at 2-6).

Joe Robinson is another truck driver, who has testified that he was in line to have his truck unloaded when he saw the plaintiff struck in the back or head by a piece of wood about three feet long that came out of the Powerfeed. The defendant points out that, prior to his deposition testimony, Robinson signed two unsworn statements, and the defendant complains that they are materially different, especially in terms of "where the Plaintiff was physically located when he purportedly was struck." (Doc. 116 at 1-2). Robinson's first statement placed the plaintiff in the "safe shed" but, a few days after Tolbert testified it was unlikely the plaintiff could have been struck by a log ejected from the Powerfeed if he were in the safe shed, Robinson signed a second statement placing the plaintiff in the open, somewhere near his truck. (Doc. 101 at 6, 8, 23). Robinson's later deposition testimony matches his second statement. The defendant finds the change both convenient and suspicious, and it certainly furnishes fertile ground for exploration at trial.

The defendant, however, wants more. The defendant wants the testimony of Robinson excluded altogether. Since there apparently is no other witness to the incident, the exclusion of Robinson's testimony might well doom the plaintiff's case. The defendant certainly thinks so. (Doc. 127 at 3-4).

But the defendant struggles to identify a legal principle that would allow the exclusion of Robinson's testimony. He is hardly the first witness to offer inconsistent versions of an event, and hardly the first to do so under circumstances that could – at least to an eager opponent – suggest more than a mere misstatement or lapse of memory.[1] And so this case would appear to be governed by the rule that, even when a witness's testimony is "contradictory and inconsistent, it is the job of the jury to evaluate the credibility of her testimony and compare it with her previous admissions." *United States v. Chahla*, 752 F.3d 939, 948 (11th Cir. 2014).

---

[1] Robinson has offered an apparently innocent explanation for the differing versions.

3

To escape this rule, the defendant describes the issue as one of competency. (Doc. 101 at 22). "Every person is competent to be a witness unless these rules provide otherwise." Fed. R. Evid. 601. "[S]tate law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision." *Id*. Both the Alabama Rules of Evidence and the federal rules on which they are based require personal knowledge and the administration of an oath. Fed. R. Evid. 602, 603; Ala. R. Evid. 602, 603.

The defendant notes that the "personal knowledge" requirement includes the witness's possession of a present recollection of events, and it argues that Robinson cannot satisfy this requirement because "the differences in [his] statements are substantial (and so numerous) that such equates to a lack of the personal knowledge required by Rule 602." (Doc. 101 at 26-27). But a change in testimony hardly establishes that the witness has no recollection of the matter; certainly the defendant has done nothing to demonstrate the contrary, either generally or in this case.

So the defendant moves on to the oath requirement. The defendant does not suggest that Robinson would refuse to take an oath or that he is incapable of understanding what an oath denotes. Instead, the defendant "submit[s]" that the competency requirement that a witness understand an oath "logically should extend to" a requirement that the witness not "disregard" his oath. (Doc. 101 at 25). The defendant offers no authority or even explanation for such an open-ended expansion of the rules of competency. Nor does the defendant acknowledge that Rule 601 "supersedes the historic statutory rule of incompetency applied to any witness who has been convicted of perjury or subornation of perjury." Ala. R. Evid. 601 advisory committee's notes. If a convicted perjurer is competent to testify, it is difficult to imagine how a witness could be rendered incompetent by offering inconsistent unsworn statements outside of court.

The defendant next invokes the "sham affidavit" rule. (Doc. 101 at 25). "When a party has given clear answers to unambiguous questions [in deposition]

4

which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). Assuming without deciding that Robinson's second version of where the plaintiff was standing when struck contradicts his first version without explanation, neither version was sworn, so the rule cannot possibly apply. Likewise, Robinson is not a party, so the rule cannot possibly apply.

The defendant recognizes this but suggests the current situation is "analogous" to the sham affidavit context because: both statements were taken for the purpose of supporting the plaintiff's claims; both were witnessed by Robinson's wife; the first statement was nearer in time to the incident; and neither statement was notarized. (Doc. 101 at 25-26). The defendant does not explain, and it is not immediately apparent, how these circumstances are analogous to those presented in the sham affidavit situation, but it really does not matter. The sham affidavit rule is not remotely in play and, even when it is, it "is applied sparingly because of the harsh effect [it] may have on a party's case." *Allen v. Board of Public Education*, 495 F.3d 1306, 1316 (11th Cir. 2007) (internal quotes omitted). The defendant has done nothing to demonstrate that a rule so tightly circumscribed within precise boundaries may properly be used as an excuse to preclude witness testimony on mere suspicion of dishonesty.

Even could the sham affidavit rule serve as a template for use in this case, it could not result in a total preclusion of Robinson's testimony but only in exclusion of internally inconsistent testimony – a result that could not deliver a victory to the defendant, since Robinson's testimony that the plaintiff was struck by a log ejected from the Powerfeed has never wavered.

Finally, the defendant asserts without explanation that Robinson's testimony should be excluded as "inherently incredible." (Doc. 116 at 5 n.2). The single authority on which the defendant relies restricts a court's authority to

5

disregard testimony to "when it is so inherently incredible, so contrary to the teachings of human experience, so completely at odds with ordinary common sense, that no reasonable person would believe it." *Wilcox v. Ford*, 813 F.2d 1140, 1146 (11th Cir. 1987) (internal quotes omitted). Where "[t]he account of events given by [the witness] very well could have occurred" and "is not at odds with ordinary common sense or physically impossible under the laws of nature," the rule cannot apply. *Id*. It is certainly possible under common sense and the laws of nature for the plaintiff to have been either in the safe shed or near his vehicle, and the evidence is that it was possible for him to have been struck with a flying log in either location.[2] The "inherently incredible" rule has no application to Robinson's testimony.

And with that, the defendant's creative endeavors are exhausted. Its motion to exclude Robinson's testimony is due to be denied. Robinson will be permitted to testify at trial.

**II. Motion for Summary Judgment.**

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*.

---

[2] Tolbert testified it would be "far less probable" for the plaintiff to be hit if he were in the safe shed, but not that it would be impossible. (Doc. 101 at 23; Doc. 102-4 at 12). As discussed in Part II, there is ample evidence that logs flew out of the Powerfeed and struck trucks being unloaded, as well as evidence that the plaintiff was standing in front of his truck.

"Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[3] Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have

---

[3] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so.").

expressly cited. Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), and the Court accordingly limits its review to those arguments the parties have expressly advanced.

The duty of a premises owner to a business invitee such as the plaintiff is "to exercise reasonable care to provide and maintain reasonably safe premises for the use of [its] customers." *Dolgencorp, Inc. v. Hall*, 890 So. 2d 98, 100 (Ala. 2003) (internal quotes omitted). "Actual or constructive notice of the presence of the … instrumentality that caused the injury … must be proven before [the premises owner] can be held responsible for the injury." *Id*. (internal quotes omitted). The defendant argues that the plaintiff cannot establish that its premises were not reasonably safe and cannot establish that the defendant had actual or constructive notice "of the dangerous or defective condition or instrumentality." (Doc. 106 at 18-22).

The two arguments are intertwined. The defendant argues that its premises were reasonably safe because there is no evidence that anyone has ever been injured by a log from the Powerfeed "in the area where Plaintiff supposedly fell." (Doc. 106 at 20). The defendant then argues the plaintiff cannot prove it had notice that such an incident could occur because he "has not produced any evidence of substantially the same or similar incidents, or even reports of near-misses." (*Id*. at 21).

The plaintiff responds with ten property damage reports and the testimony of five witnesses. (Doc. 120-4, -8, -9, -11, -12, -13).

The property damage reports reflect damage to log trucks upon being hit by logs from the Powerfeed. (Doc. 120-9). The defendants assert that evidence of other incidents is not relevant to show notice to the premises owner "unless there is a substantial similarity between the facts existing at the time of the offered accidents and those prevailing at the time of the incident being litigated." *Kmart*

*Corp. v. Peak*, 757 So. 2d 1138, 1141 (Ala. 1999). The defendant argues the property damage reports do not meet this standard because: (1) the first nine incidents pre-date its acquisition of the property (five months before the subject incident); (2) the last incident post-dates the subject incident; (3) only one incident clearly involved the Taylor as opposed to the Andritz; (4) the reports do not document the distance the projectiles traveled; (5) the reports do not document the dimensions of the projectiles; and (6) no personal injuries occurred. (Doc. 127 at 9-10). The Court is for the most part unpersuaded.

The defendant has offered no authority for the counter-intuitive proposition that constructive notice cannot be based on incidents preceding its acquisition of the property. The incidents are recorded in formal reports, and the defendant does not deny receiving the reports – and thus constructive notice of their contents – upon its acquisition of the property. The Court does agree with the defendant that notice cannot be based on the final, February 2011 incident, since it post-dates the subject incident.[4]

The issue is whether the defendant was on constructive notice that wood expelled from the Powerfeed posed a danger to truck drivers walking (as the defendant demanded) from their trucks to the safe shed. The defendant does not explain, and the Court cannot conceive, what possible difference it could make to this analysis whether the logs being ejected from the Powerfeed had been placed there by the Andritz or by the Taylor. The reports may not identify in feet and inches how far the projectiles traveled, but all of them went far enough to damage a log truck, and it is clear from the defendant's own evidence where the log trucks parked while being unloaded. (*E.g.*, Doc. 105-10 at 2). Similarly, the reports may

---

[4] Without attempting to tie the proposition to the facts of this case, the defendant cites a federal case for the proposition that a court should not consider incidents "too remote in time." (Doc. 127 at 6). The most remote incident relied on by the plaintiff occurred 5¼ years before the subject incident. (Doc. 120-9 at 2). Without argument or authority from the defendant, which is lacking, the Court cannot conclude that this is "too remote" as a matter of law.

not measure the dimensions of the projectiles, but any projectile capable of damaging a vehicle is capable of injuring a human being.

Most curious is the defendant's argument that these incidents could not impart the required notice because no drivers were hurt in these incidents. The question, again, is whether the defendant was on notice that wood expelled from the Powerfeed risked injury to drivers in the area, and wood that flies far enough, and with enough force, to damage log trucks is wood that flies far enough, and with enough force, to injure any driver in that area, regardless of whether a driver has been unfortunate enough to be struck. The defendant identifies no authority for its proposed "one free injury" rule, which the Court rejects.

The defendant has failed to demonstrate that the property damage reports do not create a jury question as to whether it was on notice of the danger to drivers posed by logs ejected from the Powerfeed. The testimony of the five witnesses simply adds to the plaintiff's showing.

Frederick Rudolph, a former employee of the defendant, testified that, throughout the period from 2008 to 2013, he saw wood ejected from the Powerfeed, as long as eight feet and traveling as far as the Taylor (past where the trucks parked for unloading). He saw trucks damaged once or twice and saw trucks hit lots of times without being damaged. He has seen logs fly out of the Powerfeed while drivers were in the area, walking to the safe shed. He reported to his supervisor that wood hops or flies out of the Powerfeed. (Doc. 120-12 at 6-7, 9, 11, 14-17, 19-20, 24-25, 27). The defendant's only response is that Rudolph indicated that trucks usually were not damaged when hit and that the incident involving the eight-foot log occurred at night. (Doc. 127 at 8-9). A log that does not damage a log truck can damage a human being, and it cannot matter for notice purposes that an episode occurred at night; the point is not that someone was endangered on any particular occasion but that these occasions arose repeatedly and reflected an underlying risk of injury to persons in the area while the Powerfeed was in operation.

Tim King, an employee of the defendant, testified that he has seen a few pieces of wood up to two feet long come out of the Powerfeed, with one hitting a truck being unloaded. (Doc. 120-8 at 5, 9-10, 13). The defendant's only response is that King saw but one incident, that it occurred years ago, that the Andritz was being used, and that he never saw a piece of wood land where the plaintiff was found on the ground. (Doc. 127 at 9). Actually, the defendant testified to multiple incidents, and as previously stated the defendant has not shown that the passage of time or the use of the Andritz deprives incidents of probative value. There is evidence that the plaintiff was standing a few feet forward of his truck (and so a few feet down the Woodline in the direction of the Debarker), but the defendant has provided no argument or authority for the proposition that the danger to drivers in an unloading area through which logs repeatedly fly must be measured separately for every square foot of the territory.

Rickey Carthon, a log truck driver, testified that he has seen wood get kicked out of the Powerfeed and fly through the air several times, including once when a piece of wood five feet long and eight inches in diameter flew out and struck the passenger-side mirror on his truck, breaking the mirror and denting the door. (Doc. 120-11 at 3-4, 26).[5] The defendant's only response is that incidents without property damage are irrelevant and that the one incident involving a damaged truck occurred when the Andritz, not the Taylor, was in use. (Doc. 127 at 8). Again, the point is not that every projectile hits and damages a truck but that projectiles repeatedly enter the area where drivers are required to walk, exposing them to risk of injury. And as previously noted, the defendant has not explained how it could be relevant to the notice analysis whether the logs were placed in the Powerfeed by the Andritz or by the Taylor.

Foster Nettles, another truck driver, testified that he has sometimes seen pieces of wood two feet long fly out of the Powerfeed and land out on the slab

---

[5] This is a different incident than any of those reflected in the property damage reports.

where the trucks are unloaded. (Doc. 120-4 at 3, 10). The defendant's only response is that Nettles has not seen wood fly farther than ten lateral feet from the Powerfeed and that he did not provide the dimensions of the wood. (Doc. 127 at 8). As noted above, Nettles did in fact provide dimensions. Ten feet from the Powerfeed is not far enough to reach where the trucks park, but it is in the vicinity, and again the defendant has not shown that a prior incident must involve the same precise square foot of earth as the subject incident. Nettles' testimony furthers the impression of a work area bombarded with projectiles.

James McCollum, another truck driver, testified that he has seen logs two to four feet long fly out of the Powerfeed and sail as far as where the trucks stop for unloading. (Doc. 120-13 at 20-23). The defendant's only response is that McCollum never notified the defendant of these episodes. (Doc. 127 at 8). The point, though, is that these incidents appear to have happened with sufficient frequency to raise an inference that the defendant was or should have been aware of them. Certainly the defendant has not demonstrated that they fail to do so as a matter of law.

In summary, the defendant has failed to show that the plaintiff's evidence is insufficient to create a jury issue as to whether it had actual or constructive notice of the dangerous condition created by the repeated expulsion of logs from the Powerfeed into the unloading area. Accordingly, the Court need not consider the plaintiff's alternative argument that, under the circumstances of this case, he is not required to demonstrate notice. (Doc. 120 at 17-19).

The defendant addresses the plaintiff's evidence only with respect to its notice vel non of a dangerous condition. (Doc. 127 at 4-12). The defendant has not argued that the plaintiff's evidence is insufficient to create a jury issue as to the existence vel non of a reasonably safe premises, and the Court will not explore that issue on the defendant's behalf.

The defendant's only argument as to the existence vel non of a reasonably safe premises is its calculation that, over the course of a decade since the

Woodline was installed, several hundred thousand loads of logs must have arrived at the facility, yet there is no evidence of any person being struck by a log ejected from the Powerfeed. (Doc. 106 at 15, 20). The defendant offers no authority for the proposition that an otherwise dangerous condition (logs being repeatedly flung into the unloading area) is rendered non-dangerous if no one is injured by it. Again, the Court will not look for legal support on the defendant's behalf.

### III. Motion to Strike.

Embedded in the defendant's reply brief is a motion to strike the plaintiff's evidence discussed in Part II. (Doc. 127 at 1-2, 7). The only ground asserted is that the evidence is inadmissible and not capable of being reduced to admissible form for trial. (*Id*. at 2). It is difficult to see how the property damage reports, and the first-hand accounts of the witnesses, could fail to be admissible or reducible to admissible form, and the defendant does not explain how this could be so. The motion to strike must therefore be denied.

### CONCLUSION

The plaintiff's "withdraw[al]" of Counts Two through Six, construed as a motion for voluntary dismissal under Rule 41(a)(2), is **granted**. Counts Two through Six are **dismissed** pursuant to that rule.

For the reasons set forth above, the defendant's motion to exclude the testimony of Joe Robinson is **denied**; its motion to exclude the testimony of Robert Tolbert is **denied as moot**; its motion for summary judgment as to Count One is **denied**; its motion for summary judgment as to Counts Two through Six is **denied as moot**; and its motion to strike is **denied**.

DONE and ORDERED this 10th day of October, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE